Argued at Pendleton October 30, 1945; reversed January 15, 1946

## BANKS ET AL. *v.* COMMUNITY CHURCH OF LA GRANDE

(165 P. (2d) 65)

Before BELT, Chief Justice, and ROSSMAN, BAILEY, LUSK and HAY, Associate Justices.

[ 1 ]

*S. H. Burleigh,* of La Grande (Dixon & Burleigh, of La Grande, on the brief), for appellants.

*R. J. Kitchen,* of La Grande, for respondent.

ROSSMAN, J.

This is an appeal by the three plaintiffs from a decree of the circuit court which dismissed their complaint. The plaintiffs, who allege themselves to be trustees of Boyd Memorial Baptist Church, of La Grande, instituted this suit for the purpose of securing a decree holding void a deed of conveyance executed November 2, 1943, by a group of five persons who purported to act as the trustees of Boyd Memorial Baptist Church. The deed described a parcel of real property situated in La Grande upon which stands the Boyd church, and named as grantee the defendant. February 20, 1930, the title to the property just mentioned had been conveyed to the trustees of Boyd Memorial Baptist Church. According to the complaint, the plaintiffs, on November 2, 1943, were, and at all times since have been, the trustees of the church. Further, according to the complaint, the five individuals who signed the deed of November 2, 1943, were never trustees of the Boyd church and had no right to execute any instrument on its behalf. The complaint says: "Said deed and the claim of said defendant corporation tends to cloud the title of these plaintiffs to said land." The prayer asks for a decree holding the deed executed on November 2, 1943, void and fraudulent.

The answer admits that the Boyd Memorial Baptist Church is an association of individuals banded together for the purpose of carrying on religious worship in La Grande. It also admits that title to the property described in the complaint was conveyed February 20, 1930, to the trustees of the Boyd church and that later a house of worship was erected upon the property. Further, according to the answer, the defendant corporation was organized November 2, 1943, and upon that day the five persons whom we have already mentioned executed the deed of conveyance attacked by the complaint. The answer denies that the deed of November 2, 1943, was merely a "purported deed" and alleges that it was a "good and sufficient warranty deed" which conveyed title to the defendant.

It is seen from the review of the pleadings that this suit challenges the validity of the deed executed November 2, 1943, and that the determination of that issue is dependent upon which of the two aforementioned groups constituted the board of trustees at the time the deed was executed.

The complaint alleges that D. D. Banks, James White and Will Love were the trustees of Boyd Memorial Baptist Church November 2, 1943, and that they had held that office for a long time prior thereto. They were also, according to further averments, the trustees at the time the suit was filed. Paragraph 6 of the complaint follows:

"On the 2nd day of November, 1943, Jennie Stewart, Reda Coney, Ethel Torrence, Lucille Samuel and J. B. Haymon, representing themselves to be trustees of the association known as the Boyd Memorial Baptist Church, executed and delivered to the Community Church of La Grande, a corporation, a deed of conveyance purporting to convey to

said corporation the real property hereinbefore described, * * *.''

Concerning the averment just quoted, the answer says:

"Defendant admits paragraphs * * * and six, excepting that in said paragraph six, they deny that the deed mentioned therein was a purported deed, but said deed was good and sufficient warranty deed conveying the property of the Boyd Memorial Baptist Church to the Community Church * * *.''

The answer nowhere avers that Jennie Stewart, Reda Coney, Ethel Torrence, Lucille Samuel or J. B. Haymon were ever trustees of the Boyd church, unless an inference to that effect may be drawn from the language just quoted. Certainly the defendant's averment could not be the basis of a charge of perjury if the evidence proves that the five purported trustees were not such in fact.

The defendant at the time of the trial claimed that Jennie Stewart, Reda Coney, Ethel Torrence, Lucille Samuel and J. B. Haymon, all of whom are mentioned in the quoted language, were the trustees of the Boyd church November 2, 1943, and that following the organization of the defendant ecclesiastical corporation they became the members of its board of trustees. Haymon, as a witness, swore that he was never elected a trustee of either the Boyd church or of the defendant church. The other four persons avowed that they were trustees of the Boyd church when the challenged deed was executed, and that they are now trustees of the defendant Community church. William Torrence, who testified that he was the pastor of the Boyd church November 2, 1943, claimed that he was chosen minister of the Community church the moment it was organized.

The record indicates that the Boyd Memorial Baptist Church was organized in 1929 so that the colored people of La Grande who subscribed to the Baptist faith could have a house of worship and Sunday school facilities of their own. A leading spirit in the organization of the church was Mr. D. D. Banks, who is one of the plaintiffs and regional secretary of the National Baptist Home Mission and Church Extension Board. He was assisted in part by his brother, Reverend A. A. Banks, a minister of the Baptist Church. Neither of the two Bankses reside in this state. Both are officers of national Baptist organizations and both are required to travel about the country. William Torrence, aforementioned, James White, William Jones and Rufus Hale, residents of La Grande, helped to organize the church and became charter members. Mr. White is one of the plaintiffs. Both of the Bankses swore that they too were charter members of the Boyd church, and D. D. Banks added that he was its first pastor.

Minutes were kept of the early meetings and these indicate that the organization meeting occurred March 13, 1929. Although an organization was effected upon that occasion, which, obviously, included some form of compact between the members, yet, so far as we can determine, no constitution or by-laws were adopted. In the course of the meeting of March 13 the church officers were elected. No resolution, however, was passed indicating how many officers should be chosen, nor was any rule adopted prescribing the length of the officers' terms. The deacons who were chosen March 13 were James White, William Jones and Rufus Hale. Mr. White was made treasurer. The three were also constituted the board of trustees of the church. No one questions the authenticity or verity of the minutes

which we have just mentioned, and, hence, it may be taken for granted that James White, William Jones and Rufus Hale were the original board of trustees of the church. Although we have said that no resolution was adopted fixing the length of term for any officer nor prescribing the number of persons who should constitute any of the boards, the minutes say: "It was adopted Hiscocks Guide be used for the church." A copy of a volume entitled The New Directory for Baptist Churches, written by E. T. Hiscox, was introduced in evidence and is before us as an exhibit. No one questions that this authority is the one to which the minutes refer. We have found nothing in it, however, which designates the number of trustees which a church shall have or which prescribes the term of office of such officials. Hence, if the record indicates that five trustees were chosen when three were already in office, it would not necessarily follow that any of the five was intended to be a successor to any of the three. It might be that under such circumstances the membership had decided to have eight trustees.

■ The plaintiffs claim that prior to 1938 William Jones and Rufus Hale vacated their offices as trustees and that the membership chose as successors to them D. D. Banks and Will Love. Thus, according to the plaintiffs, five trustees were actually elected since the church was organized, three of them only being in office at the crucial time of November 2, 1943. The defendant claims that none of the five mentioned by the plaintiffs was in office November 2, 1943, and that the five who signed the deed conveying title to the defendant were then in office. In determining how many trustees were actually chosen and whether or not those suggested by the defendant were intended to be the successors of the three plaintiffs, we are, of course,

compelled to go to the evidence. The latter consists not merely of the testimony given by the witnesses, but also of minutes kept at meetings of the membership and of the board of trustees. Sometimes two individuals, acting separately, kept minutes, and accordingly we have double minutes of some meetings. No explanation was given of that circumstance. One minute book has as its opening entry-date March 12, 1929, and contains entries as late as August 23, 1931. Another minute book begins with an entry of March 14, 1929 and terminates with a meeting which was held March 6, 1931. The aforementioned D. D. Banks produced a minute book which recorded the events of two meetings: one, July 17, 1938, and the other, August 19, 1938. Still another book began with a meeting held January 24, 1942 and continued through to June 13, 1944. If it be said that the authority of the various entrants was not fully established, it is nevertheless true that the entries are proper subjects for the refreshment of memory: § 4-707, O. C. L. A. The testimony concerning the many meetings when church business was transacted is occasionally vague and lacking in identifying details. One of the members of the church, who sensed the situation, explained:

"I admit that we haven't got everything printed as a church should have, in regular order and good understanding. I admit that, but we hadn't the material to do with, as other churches have, and we have to do the very best we can with these little meetings that we get together. * * * We admit that we didn't have pastors and big D. D.s to help us out. We went in and did the very best we could."

We shall keep that explanation, which rings of commendable sincerity, in mind as we endeavor to interpret the record.

Shortly after the church was organized it appeared that the aforementioned William Torrence was a licensed Baptist minister. Thereupon he was made pastor of the church. He served for at least nine years. The church in 1929 possessed no property and its membership was scarcely more than a handful. Services were conducted in a rented room which, seemingly, was modest in size and in its appointments. An impression can be gained of the nature of the little meeting room by glancing at the following minute which was recorded for March 14, 1929:

> "It was mov. that we pay J. P. Plasse $5.00 for rent. It was moved that we pay Jack Bush rent for stove $2.00. * * * Money raised by ladies $21.82 * * * after all bills paid we had $6.15."

The treasury of the little church was always poor, but the wants of the congregation did not call for elaborate expenditures. Apparently the members were thinking of their souls, not of their physical comfort. The story that is told by the minutes and the transcript of testimony is that of a small number of people—some of them devoted souls—who were struggling together under difficult financial circumstances in their efforts to gain spiritual guidance. How to get sufficient money so that a fire could be maintained in the stove and so that the light service would not be discontinued was an ever present problem. The minutes once more reveal "the short and simple annals of the poor." Yet this small number of souls with their limited funds succeeded in purchasing, in 1930, a city lot as a site for a church edifice and, in 1937, succeeded in building upon it a house of worship. It was not until success had rewarded their efforts that there occurred the schism which eventually yielded this lawsuit.

■ We come now directly to the problem as to who were the trustees November 2, 1943, when the attacked deed was executed. By that time the congregation was fourteen years old and the house of worship six years old. As we have indicated, Rufus Hale, William Jones and James White were the original trustees. It is agreed that Rufus Hale and William Jones, some years after being elected, left La Grande permanently and all seem to agree that the offices of those two men thereafter were deemed vacant. However, no successor for either of them was at once chosen. The facts just mentioned appear to be certainties and afford us a basis for considering what next ensued.

James White never moved from La Grande, and swore that his office as trustee was never terminated. He likewise swore that no successor for him was ever chosen. To the contrary, he testified that he was still a trustee at the time of the trial. We observe that minutes produced by the defendant, which record the transactions of a meeting held February 28, 1942, contain the following:

"* * * New business. Electing officers of the Boyd Memorial Baptist Church. * * * Motion and second Ethel Torrence would be church sect. L. Samuel, ast. sect. Jim White treasurer. * * * Motion Jim White would be deacon of the church * * *."

Jim White is James White aforementioned. Mr. White swore that he regularly attended all meetings of the trustees and virtually all services of the church. The following is taken from his cross-examination:

"Q. What is the last time you have been to church?

"A. I was there Sunday.

"Q. At the Community Church?

"A. At the Community Church.

"Q. Prior to that what was the last time?
"A. Continuous all the time."

We observe that Mr. White's name appears regularly in the minutes of the church: at one time he served upon the church's pulpit committee; at another time he was entrusted with the task of paying the church's debt; when the church was built he canvassed the town for donations to the building fund; upon many occasions he opened church meetings with prayer; and for years he served as deacon, treasurer and trustee. His name appears with regularity upon the books of the church as a donor, and, according to Mr. Torrence's own statement, it was White who induced him to abandon construction of a rival church and return to the Boyd church after he had left the latter in a fit of petulance. Mr. Torrence, referring to Mr. White, said: "He opened the door so I could get in." If there was a man in the Boyd congregation who could be termed "a pillar of the church", White was seemingly that man. He earned his bread by the sweat of his brow as a railroad section crew worker. We shall later consider the evidence upon which the defendant relies to prove that White was not a trustee November 2, 1943. We now turn to the evidence which tends to prove that Mr. William Love, one of the plaintiffs, was a trustee when the challenged deed was signed.

Although Mr. Torrence read some records of the church which indicated that Mr. Love was a charter member, nevertheless, it appears that he did not become a member until some time after the church was organized. A set of minutes contains an entry made August 23, 1931, which states:

"It was moved and seconded Mr. Wm. Love be received into the church as a member."

That entry apparently is correct. Mr. Love and some of the other witnesses swore that he was elected a trustee shortly prior to 1938. However, his election is not recorded in any minutes that were introduced in evidence. Upon the other hand, minutes which delineate the transactions of the board of trustees mention Mr. Love as present and participating. For instance, Mrs. William Torrence, a witness for the defendant, produced a set of minutes kept by her own hand which she read from the witness stand. It says in part:

"La Grande, Oregon, July 8, 1943. Boyd Memorial Baptist Board met at 7:30 o'clock. * * * Mr. Love said change the church to Community. * * * Sister Lucille Samuel, chairman, Ethel Torrence, secretary."

During the trial the defendant's efforts took the turn of trying to prove that Love was not a trustee when the challenged deed was executed, rather than attempting to prove that he was never a trustee at all. For instance, one of the defendant's witnesses was asked, and answered, as follows:

"Q. Was Will Love a trustee at that time, in 1942, when—
"A. (interrupting) No, he wasn't even an attendant."

The circumstance that Mr. Love's election is not recorded in the minutes which are before us may be due to the fact that no minutes for the period 1932 to the middle of 1938 were produced at the trial. Mr. Torrence testified that he had in his home minute books covering the years 1934 to and including 1937, but he did not produce them. No one contradicted Mr. Love's testimony that he was chosen a trustee, and no one claimed that he was elected Love's successor. We believe the evi-

dence satisfactorily proves that some time prior to 1938 Mr. Love became a member of the board of trustees. He swore that he still remained a member of the board at the time of the trial.

We come now to the testimony concerning the alleged election of D. D. Banks as a member of the board of trustees. In July, 1938, D. D. Banks and his brother, A. A. Banks, returned to La Grande to revive interest in the church. Mr. Torrence was then pastor. It is conceded that both of the Bankses had helped materially in the purchase of the building site and in the construction of the edifice. In fact, although neither was a resident of La Grande, both had assisted substantially out of their own pockets, as well as with denominational money, to pay the purchase price of the site and the cost of the construction of the building.

July 17, 1938, and August 19, 1938, meetings were held which the two Bankses described as gathering of the congregation of Boyd Memorial Baptist Church. D. D. Banks, who swore, "I was elected secretary at the first meeting," maintained minutes of these meetings. From those of July 17, we now quote:

"* * * The purpose of the meeting was stated by Rev. A. A. Banks. Rev. Wm. Torrence refused to preside as Chairman and after some remarks suggested that Rev. A. A. Banks preside. It was motioned and seconded that Rev. A. A. Banks be chairman of the meeting. Motion carried. It was motioned and seconded that Rev. D. D. Banks be Secretary of the meeting. Motion carried. * * * the chairman called for unfinished business which was followed by many remarks about the resignation of Rev. Wm. Torrence after which it was motioned and seconded that the resignation of Rev. Wm. Torrence be excepted. the motion was carried. Rev. Torrence left the meeting in an angry

mood. It was motioned and seconded that a business meeting be held 8-19-38 for the purpose of electing a minister to the pastorate of the church and other business necessary. Motion carried. * * * It was motioned and seconded that Rev. D. D. Banks be elected trustee to serve with Brother Jim White. Motion carried."

From the minutes of the meeting of August 19, we quote:

"* * * The purpose of the meeting was stated and minutes of the last meeting were read and adopted. A call was made for unfinished business. After several remarks were made it was motioned and seconded Rev. A. A. Banks be elected to the pastorate of the church. Motion carried. It was motioned and seconded that a charge be placed against Rev. Wm. Torrence for arrogant deportment; the motion was carried. * * * It was motioned and seconded that officers of the church be elected annually or until their successors were named, automatically succeeding themselves in case no election be held. Motion carried."

The matter of filing a charge against Mr. Torrence was not pursued. The plaintiffs depend upon the foregoing minutes of July 17, as well as upon the testimony of four of the persons present at that meeting, to prove that Mr. D. D. Banks was elected a trustee July 17, 1938. Mr. Banks swore that no successor to himself was ever chosen and that he still held his office at the time of the trial.

We shall now mention the evidence produced by the defendant for the purpose of proving that the plaintiffs were not trustees November 2, 1943, and that at that time the trustees were Jennie Stewart, Reda Coney, Ethel Torrence, Lucille Samuel and J. B. Haymon. We shall first consider the evidence upon which the de-

fendants depend to show that D. D. Banks was never a trustee.

Counsel for the defendant, referring to Mr. D. D. Banks, asked Mr. Torrence, "Was he ever a trustee?" The witness replied, "No." Much of the evidence produced by the defendant, in an effort to prove that Messrs. Banks, Love and White were not trustees, is of the fiat type just indicated. It consists of ipse dixit No's devoid of supporting facts.

Mr. Torrence, referring to the meeting held in July, 1938, in the course of which the plaintiffs claim that D. D. Banks was elected a trustee, testified:

"In 1938 Mr. A. A. Banks, Mr. A. A. Banks, D. D., nonmembers, Mr. James White, came in town, James White didn't come with him, but he came to my house, and said Banks been here, want to have a meeting. I said, 'What about?' He said, 'I don't know.'

"Q. Who said that?
"A. James White."

Mr. Torrence at that time was the pastor of the church, and it seems conceded that in July, 1938, White was the chairman of the church's board of trustees. Thus, it appears that in July of 1938 the chairman of the board of trustees called upon the pastor with a request that "a meeting" be called. We again turn to Mr. Torrence's testimony:

"Q. Did you hold the meeting?
"A. I suppose they did, I didn't stay there.
"Q. How many were there?
"A. A. A. Banks, A. A. Banks' wife, Mr. D. D. Banks and James White.

\* \* \*

"Q. That is the time you got angry?
"A. I walked out \* \* \*."

Mr. Torrence claimed that the persons just mentioned were the only ones present at the meeting and that none of the Bankses were members of the church. He, therefore, claimed that the transactions of the two meetings of July and August, 1938, had no effect upon the church.

It is our belief that the members of the Boyd Memorial Baptist Church regarded the two Banks brothers as members of the congregation, and that the Bankses were, in fact, members of that body.

It will be recalled that the minutes of the meeting of July 17 show that Mr. Torrence resigned as pastor upon that occasion and that his resignation was accepted. Following this meeting Mr. Torrence decided to build a church of his own and actually made considerable headway with the construction. Eventually, however, he abandoned work upon the new edifice and in 1939 returned to the Boyd church. In view of the fact that Mr. Torrence, following the meeting of July 17, left the Boyd church and proceeded with the construction of one of his own, it seems that the meeting of July 17 must have been more important than he, as a witness, conceded. More people must have attended that meeting than Mr. Torrence admitted. Manifestly he resigned as pastor upon that occasion, and evidently the congregation, on July 17, accepted his resignation. Thus, the gathering of that day must have been a meeting of the majority of the congregation. White and Love swore that they attended the meeting of July 17, 1938, and both said that Mr. Banks' minutes were correct. Mr. D. D. Banks swore that the meeting of July 17 was attended by ''a majority of the members.'' His brother gave like testimony. The latter protested, upon cross-examination, that he was unable to recall

the exact number of members who were present, but felt sure that they were at least ten or twelve in number. The testimony given by Mr. Torrence, in his efforts to show that the gathering of July 17, 1938, was not a regular meeting of the members of the Boyd church, stands virtually alone. We cannot accept it. It is our belief that the meetings of July and August, 1938, were regular meetings of the membership and that both were preceded with proper notification to the membership. Such being our conclusion, we think that Mr. D. D. Banks, on July 17, 1938, was chosen a trustee of the Boyd Memorial Baptist Church.

As already said, some of the evidence upon which the defendant relies to prove that Banks, Love and White were not trustees November 2, 1943, consists of fiat testimony. For instance, Lucille Samuel testified: "No, Mr. White is not a trustee at this time." The basis for her statement was not indicated. It will be observed that Mrs. Samuel employed the present tense—she testified on December 7, 1944. The attacked deed was signed thirteen months previously. When she said that "Mr. White is not a trustee at this time", she did not indicate whether he was defeated for re-election, whether he was recalled, or by what other means his term had ended. How little credence can be attached to her testimony, which, undoubtedly, was well intentioned, is indicated by the following also taken from her evidence:

"Q. How about Mr. White?
"A. No, he wasn't trustee to my knowledge.

It is entirely clear that Mr. White was trustee, at least at one time. We shall not mention the other ipse dixit testimony given by other witnesses.

In its efforts to prove that Lucille Samuel, Jennie

Stewart, Ethel Torrence, Reda Coney and J. B. Haymon were trustees at the time the questioned deed was executed, the defendant depends in large part upon the minutes of a meeting held February 28, 1942. From them we quote:

"Boyd Memorial Baptist Board met at 8 o'clock. * * * New business. Electing officers of the Boyd Memorial Baptist Board. Motion and second Mrs. L. Samuel, Mrs. Jennie Stewart, Mrs. Ethel Torrence, Reda Coney, Bro. J. B. Haymon would be trustees of the Boyd Memorial Baptist Church."

It also depends upon minutes of a meeting held June 15, 1943, from which we quote:

"Boyd Memorial Baptist Board met at 7:30 o'clock. * * * Mrs. Reda Coney and bro. J. B. Haymon was added to the trustee board. Carried."

The reason for the overlapping was not disclosed.

It will be observed that the defendant contends that J. B. Haymon was elected trustee. As a witness, he described himself as a member of the Methodist faith and the ordained pastor of the Zion Methodist Church. He protested strongly that he was not a member of the Boyd Memorial Baptist Church and that he was never elected to its board of trustees. His words are: "Not on this side of the grave, not since I cried in the world." In answer to a question as to whether or not he ever attended a meeting of the trustees, he replied: "Not since God redeemed me in the world, I never attended no business meeting or knew what business was about in that church." When asked whether he had signed the deed of November 2, 1943, he declared: "How could I sign a deed when I can't write?" The attacked deed was not produced at the trial by the defendant. We are

satisfied that Mr. Haymon was never a member of the board of trustees.

The plaintiffs contend that Lucille Samuel, Jennie Stewart, Ethel Torrence and Reda Coney were not qualified for membership upon the board of trustees of a Baptist church. They claim that those four persons, like Mr. Haymon, were not Baptists. There appears to be support for their contention. For instance, shortly after the attacked deed was executed Mr. Torrence wrote a letter to Mr. A. A. Banks, in which he said: "This was none of the Baptist people signed that. I seen to that feature." The letter referred to the challenged deed. Since the only persons who signed that instrument were the five alleged trustees, Mr. Torrence's above-quoted words conceded that the signers were not Baptists. But, in the absence of any rule or by-law which delineates qualification, we believe that the election of the five above-mentioned persons to the board of trustees established their qualifications, if the election was properly conducted.

It was taken for granted throughout the trial that business meetings of the membership were required to be preceded with notice to all members. It is clear that the meeting in which the five persons whom the defendant says were elected trustees, and the other meeting in which authority is alleged to have been given to sign the deed of November 2, 1943, were not preceded with notice to all of the members. In fact, Mr. Torrence himself testified that he expressly refrained from notifying some of the members. We quote from his testimony:

"Q. You didn't notify Mr. Love of the fact that you were holding a meeting to—

"A. (interrupting) He did not told us what to do. He said that to let the white folks have it, to

give it, let them have it. He said it was understood where he would be.

"Q. Did you notify Mr. Love—he was a member, wasn't he?

"A. No, he wasn't a member then.

"Q. November, 1943—October, 1943?

"A. He was then. He didn't become a member until after we had fixed that up.

"Q. Been a charter member of the church, hadn't he?

"A. He was excluded too.

"Q. Oh, was he?

"A. Sure he was. All of them been excluded.

"Q. (The Court) All of who?

"A. The members, nearly—nearly all the members been excluded.

"Q. (The Court) What you mean?

"A. For disorderly conduct. The prior members; we picked those that didn't live right was excluded.

"Q. (Mr. Burleigh) So there was nobody left but you and the women?

"A. That is right. The men didn't do right.

"Q. When did you exclude Love?

"A. I don't remember what year it was, but a long ways back.

\* \* \*

"Q. I find here in your minutes of August, 1943, Jim White was appointed on a committee. When did you kick him out?

"A. In August?

"Q. Yes.

"A. We didn't kick him out after we start up that last time. He just come when he got ready.

"Q. This was in August, 1943, while you were still the Baptist Church?

"A. He didn't take active part, just whenever he come.

"Q. So when you was going to deed the property you didn't say anything to Love or White?

"A. No; he said he wasn't going to have anything to do with us.

"Q. Didn't notify him of the meeting?

"A. No.

"Q. Or Love?

"A. You couldn't notify him. Mr. Love said he would not quit, his wife wouldn't participate; she would have to go to Boise."

Thus, it is clear that under a claim that they had been "excluded" from membership in the church, Mr. Torrence seeks to justify his failure to have given notice of meetings to some of the members including Mr. Love and Mr. White. Although we have carefully examined the minutes, we have found nothing indicating that Mr. Love, Mr. White and the other male members of the church had been excluded from membership. The entry in the minutes upon which the defendant relies to support its charge that Mr. White was excluded from membership is of a meeting which was held September 15, 1943. Those minutes begin: "Community board met at 8 o'clock." It will be observed that that was a meeting of the board of the defendant Community Church, not of Boyd Memorial Baptist Church. The part of the minutes upon which the defendant relies reads thus:

"New business. Motion and second that bro. Jim White be moved from treasure. Carried. * * * Motion and second that we move Jim White from Decon."

But those minutes do not show that he was excluded from the membership of any church. Minutes of the Boyd church as recent as those of June 15 and July 8, 1943, mention Mr. White as participating in the meet-

ings. And, of course, the very entry upon which the defendant depends to prove that Mr. White was excluded from membership shows that as late as September 15, 1943, he was treasurer and deacon. It is true that the minutes of a meeting held September 5, 1930, state:

"It was moved and s. we perfeer a charge against Mr. White for walking in disorderly conduct. According to Math. 18 ch."

We find nothing in the minutes which indicates whether or not a charge was actually filed, but we observe that Mr. Torrence, after referring to Mr. White and an incident which he said occurred in 1932, testified:

"And he come back, and begged so, and cried around, that they throwed me out and admitted him back."

In any event, the fact that Mr. White is repeatedly mentioned in the minutes which were taken after September 5, 1930, as an officer and active participant in the affairs of the Boyd church shows that he was a member of the church when the challenged deed was signed. He himself swore that his membership was never terminated, and that he was never notified of any charges made against him. Love likewise described his own membership in the church as continuous from its inception.

There is nothing whatever in the minutes that indicates that Mr. Torrence was given authority to exclude anyone from membership in the church. Nor is there anything in the minutes indicating that Mr. Love, Mr. White or any other male member of the church was excluded from membership at or about the time to which Mr. Torrence referred. We are completely satis-

fied that these men were members at the times when Mr. Torrence claims the meetings were held which elected as trustees the five persons who signed the deed of November 2, 1943, and when it is claimed authority was conferred upon those persons to sign the deed.

Both White and Love testified that they received no · notice whatever of the meeting in which it is claimed that the five signers of the challenged deed were elected trustees, and of the other alleged meeting in which it is said authority was given to sign the deed. We are, of course, satisfied that no notice of those two meetings was given to these two men.

Although Boyd Memorial Baptist Church possessed no written constitution or by-laws, yet it is obvious that there was some form of compact between the members. A rule of proceeding which was frequently mentioned by the witnesses required notice to be given preliminary to the holding of a business meeting of the members. We quote the following from 54 C. J., Religious Societies, § 30, p. 19:

"A meeting of its members properly called and organized is a necessity to the validity of any action a religious society or congregation may take wherever the constitution of the society so prescribes, or wherever the action of a congregation as such is in issue   *   *   *."

And we observe that the same treatise, in § 35, p. 21, says:

"To constitute a valid election notice must be given in conformity to the charter, constitution and by-laws."

We believe that usages having the effect of by-laws had been developed by the membership of the Boyds

church which required notice to be given to all members preliminary to the convening of the membership of the church for the transaction of business. The very fact that Mr. Torrence studiously avoided sending notice to White, Love and the other male members of the congregation, and then sought to justify his act on the ground that they had been excommunicated, shows that he, too, recognized the rule just mentioned. It is manifest that the election of Jennie Stewart, Reda Coney, Ethel Torrence, Lucille Samuel and J. B. Haymon was not preceded by notice to the members of the church. It is likewise manifest that the meeting in which it is claimed that authority was given to execute the deed of conveyance was not preceded with notice to the members. The failure to give notice obviously denied validity to the two meetings and to the action then taken.

Even if it could be said that the five people who signed the deed were elected trustees, that did not automatically terminate the office of the three plaintiffs. No one contends that the election of the five was preceded by a motion terminating the term of office of the three, or that the five were intended to become successors to the three. We, however, do not rest our conclusion upon that ground, but place it upon the premise that no notice was given to all members prior to the two business meetings and that, therefore, the action taken at the meetings lacked validity.

For the reasons aforementioned the circuit court erred when it dismissed the complaint. Its decree must be reversed. The plaintiffs are entitled to a decree in harmony with the prayer of their pleading. Costs and disbursements will be awarded to neither party.

BAILEY, J., concurs in the result.